Gerald P. Schneeweis, SBN 101331 (*gschneeweis@mpplaw.com*)
**MORRIS POLICH & PURDY LLP**
600 West Broadway, Suite 500
San Diego, California 92101
TelePhone: (619) 557-0404 / Facsimile: (619) 557-0460

Donald L. Ridge, SBN 132171 (*dridge@mpplaw.com*)
Raina L. Richter, SBN 239357 (*rrichter@mpplaw.com*)
**MORRIS POLICH & PURDY LLP**
1055 West Seventh Street
Twenty-Fourth Floor
Los Angeles, California 90017
Telephone: (213) 891-9100 / Facsimile: (213) 488-1178

Philip Jones (*pjones@brinksgilson.com*) (*Pro Hac Vice*)
Robert S. Mallin (*rmallin@brinksgilson.com*) (*Pro Hac Vice*)
Andrew J. Avsec (*aavsec@brinksgilson.com*) (*Pro Hac Vice*)
Dawn M. David (*ddavid@brinksgilson.com*) (*Pro Hac Vice*)
**BRINKS GILSON & LIONE**
NBC Tower - Suite 3600
455 N. Cityfront Plaza Drive
Chicago, Illinois 60611
Telephone: (312) 321-4200 / Facsimile: (312) 321-4299

*Attorneys for Plaintiffs GRUPO BIMBO S.A.B. DE C.V.; and BARCEL USA, LLC*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRUPO BIMBO, S.A. B. DE C.V.; and BARCEL USA, LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> SNAK-KING CORP.; and THE TRUSTEE OF THE LEVIN FAMILY 2010 IRREVOCABLE GIFT TRUST <br><br> Defendants. <br><br><br> AND ALL RELATED CROSS CLAIMS. | CASE NO. 13-CV-02147-ABC (VBKx) <br><br> Hon. Audrey B. Collins; Ctrm: 680 <br> Magistrate Judge Victor B. Kenton <br><br> **DISCOVERY MOTION** <br><br> **JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL INTERROGATORY RESPONSES** <br><br> Hearing Date: May 6, 2014 <br> Hearing Time: 10:00 a.m. <br> Location: Courtroom 590 <br><br> Pre-Trial Conf.: December 15, 2014 <br> Trial Date: January 13, 2015 <br> Discovery Cut-Off: April 30, 2014 <br><br> Action Filed:      March 25, 2013 |

# TABLE OF CONTENTS

I.  PLAINTIFFS' INTRODUCTORY STATEMENT ........................................4

   A.  Nature of the Case and Discovery Disputes. ..................................4

   B.  The Discovery Cut-off and Need for a Discovery Order. ....................6

II.  DEFENDANTS' INTRODUCTORY STATEMENT ...................................6

III.  JOINT SPECIFICATION OF ISSUES IN DISPUTE ..............................8

   A.  Did Defendants Improperly Treat Interrogatory Nos. 1, 3, and 12 as Including Discrete Subparts That Count Against the Twenty-Five Interrogatory Limit?.............8

     1.  Is Interrogatory No. 1 a single interrogatory, or does it contain three discrete subparts? ..................................................................8

       a.  Plaintiffs' Contentions and Points and Authorities ...................9

       b.  Defendants' Contentions and Points and Authorities.................11

       c.  Plaintiffs' Proposed Resolution During Conference ..................14

       d.  Defendants' Proposed Resolution During Conference................15

     2.  Is Interrogatory No. 3 a single interrogatory, or does it contain three discrete subparts? ..................................................................15

       a.  Plaintiffs' Contentions and Points and Authorities ...................16

       b.  Defendants' Contentions and Points and Authorities.................19

       c.  Plaintiffs' Proposed Resolution During Conference ..................21

       d.  Defendants' Proposed Resolution During Conference................21

     3.  Is Interrogatory No. 12 a single interrogatory, or does it contain four discrete subparts? ..................................................................22

       a.  Plaintiffs' Contentions and Points and Authorities ...................24

       b.  Defendants' Contentions and Points and Authorities.................26

       c.  Plaintiffs' Proposed Resolution During Conference ..................28

       d.  Defendants' Proposed Resolution During Conference................28

   B.  Did Defendants Improperly Object to Interrogatory No. 10 as Vague, Irrelevant, and Unduly Burdensome?..............................................28

     1.  Plaintiffs' Contentions and Points and Authorities.........................29

     2.  Defendants' Contentions and Points and Authorities .....................31

3.   Plaintiffs' Proposed Resolution During Conference..........................................35

4.   Defendants' Proposed Resolution During Conference ........................................36

C.   Did Defendants Improperly Fail to Respond to Interrogatory Nos. 15-17 Based on Their Position Regarding Discrete Subparts in Interrogatory Nos. 1, 3, and 12?........36

1.   Should Interrogatory No. 15 be counted as within the twenty-five interrogatory limit?......................................................................................................................36

a.   Plaintiffs' Contentions and Points and Authorities ....................................37

b.   Defendants' Contentions and Points and Authorities.................................37

c.   Plaintiffs' Proposed Resolution During Conference ..................................39

d.   Defendants' Proposed Resolution During Conference................................39

2.   Should Interrogatory No. 16 be counted as within the twenty-five interrogatory limit?......................................................................................................................39

a.   Plaintiffs' Contentions and Points and Authorities ....................................40

b.   Defendants' Contentions and Points and Authorities.................................40

c.   Plaintiffs' Proposed Resolution During Conference ..................................41

d.   Defendants' Proposed Resolution During Conference................................41

3.   Should Interrogatory No. 17 be counted as within the twenty-five interrogatory limit?......................................................................................................................42

a.   Plaintiffs' Contentions and Points and Authorities ....................................42

b.   Defendants' Contentions and Points and Authorities.................................43

c.   Plaintiffs' Proposed Resolution During Conference ..................................44

d.   Defendants' Proposed Resolution During Conference................................44

IV. PLAINTIFFS' CONCLUSION...............................................................................44

V.  DEFENDANTS' CONCLUSION............................................................................45

1    This Joint Stipulation is submitted by the undersigned parties pursuant to Local

2  Rule 37-2 in connection with Plaintiff Grupo Bimbo, S.A. B. de C.V.'s and Barcel

3  USA, LLC's (collectively "Plaintiffs") motion to compel Defendants Snak-King,

4  Corp.'s and The Trustee of the Levin Family 2010 Irrevocable Gift Trust's (collectively

5  "Defendants") responses to Plaintiffs' interrogatories.

## I.    PLAINTIFFS' INTRODUCTORY STATEMENT

7    Plaintiffs seek an order requiring Defendants to provide amended responses to

8  Plaintiffs' interrogatories.  Specifically, Plaintiffs seek an order requiring Defendants to:

9  (a) treat Interrogatories 1, 3, and 12 as single interrogatories or in the alternative provide

10 leave for additional interrogatories, (b) provide a substantive response to Interrogatory

11 No. 10, and (c) provide a substantive response to Interrogatory Nos. 15-17 as within the

12 twenty-five interrogatory limit or in the alternative provide leave for additional

13 interrogatories in order to obtain responses.

**A.    Nature of the Case and Discovery Disputes.**

15   Plaintiffs brought suit in the present action on March 25, 2013 for trademark

16 infringement alleging that Defendants TACO-LITOS corn snacks infringe Plaintiffs

17 TAKIS mark, TAKIS trade dress, and TAKIS product configuration.  Plaintiffs later

18 amended their complaint on August 30, 2013 to include a patent infringement claim for

19 the machinery used by Defendants to produce their rolled tortilla snacks.[1]

20   Plaintiffs have been attempting to obtain responses to interrogatories and relevant

21 documents through legitimate discovery means.  Defendants, however, are needlessly

22 impeding discovery relating to interrogatories, document production, requests for

23 admission, and a plant inspection.[2]  Here, Defendants try to avoid providing

---

[1] A second patent claim for the '108 patent related to the process and recipe for making
rolled tortilla snacks is also pending, but is not presently a part of this motion.
[2] For example, Defendants have only produced a few hundred pages of documents,
while Plaintiffs have produced tens of thousands of pages of documents. Defendants
refused to answer thirty-two requests for admission after claiming that phrases with
plain and ordinary meanings were vague and ambiguous. All of these matters have been
the subject of Local Rule 37-1 letters.  Additionally, Defendants resisted a request to
inspect their two manufacturing facilities unless Plaintiffs' counsel would agree to be

4

appropriately requested information by making baseless and improper objections.  For example, Defendants treat Interrogatory Nos. 1, 3, and 12 as being ten distinct interrogatories instead of properly counting each as only a single interrogatory.  Defendants used this miscounting to avoid answering Interrogatory Nos. 15-17 in their entirety.[3]

In order to avoid answering interrogatories, Defendants also play futile dictionary games with common words such as "act."  Apparently, Defendants are unable to answer Interrogatory No. 10 because they do not know what "act" means, even though they use the word in their discovery requests.  Defendants also refuse to respond to Interrogatory No. 10 using baseless and unsupported relevancy and burdensome objections.

Plaintiffs wrote to Defendants on March 7, 2014 and had a conference of counsel on March 14, 2014, in an effort to resolve these issues and avoid the necessity of bringing these disputes before the court.  (D. David Decl., at ¶3).  After counsel met and conferred, issues still remained making this Joint Stipulation unfortunately necessary.

This motion to compel comes before the Court due to Defendants' baseless objection to Interrogatory Nos. 1, 3, and 12 as constituting ten distinct interrogatories and Defendants' failure to provide substantive or complete responses to Interrogatory Nos. 10 and 15-17.  While Plaintiffs tried to work with Defendants to get full and complete responses to the interrogatories they served, Defendants still refuse to provide supplemental responses to these four interrogatories.  (D. David Decl., at ¶8).  Plaintiffs are now seeking the assistance of the Court in compelling Defendants to provide supplemental responses as these interrogatories are very important to Plaintiffs' case and Plaintiffs' ability to conduct further discovery.

Additionally, Plaintiffs Third Set of Interrogatories (Nos. 18-22) that were served

blindfolded until they got to the equipment to be inspected.  While the blindfold issue has been dropped, Defendants still have not provided a date for the inspection.
[3] Defendants also refused to answer Interrogatory No. 14 for the same reason.  However, that interrogatory relates to the '108 patent which that is not part of this motion as the parties are currently negotiating an agreement relating to the '108 patent infringement claim.

on March 11, 2014 are also currently pending.  (D. David Decl., at ¶11).  Defendants have agreed to answer Interrogatory Nos. 18-20 and 22 on April 10, 2014.  (D. David Decl., at ¶¶ 9-11).  However, plaintiffs expect that Defendants will refuse to answer Interrogatory No. 21 based on Defendants' faulty allocation of discrete subparts to Interrogatory Nos. 1, 3, and 12.  Therefore, granting this motion with respect to the number of subparts or granting leave for additional interrogatories will hopefully avoid needless future motion practice.

**B.      The Discovery Cut-off and Need for a Discovery Order.**

The April 30, 2014 discovery cut-off is now just over a month away.  (D. David Decl., at ¶17).  Defendants are continuing to prejudice Plaintiffs at every turn in the discovery process by withholding relevant and responsive information, including trying to avoid providing responsive answers to the interrogatories to which Plaintiffs are entitled.  Plaintiffs request that the Court issue an order requiring Defendants to treat Interrogatory Nos. 1, 3, and 12 as single interrogatories and requiring Defendants to provide amended responses to Interrogatory Nos. 10 and 15-17, no later than seven days after any order compelling supplemental interrogatory responses.

## II.      DEFENDANTS' INTRODUCTORY STATEMENT

Plaintiffs filed this action in March 2013, alleging that Defendants' sale of TACO-LITOS brand taquito chips – tortilla chips rolled to look like small taquitos – infringe trademark and trade dress rights that Plaintiffs claim in their TAKIS brand taquito chips. Specifically, Plaintiffs contend that they have exclusive product configuration trade dress rights in tortilla chips made in the shape of a taquito; that the bags for Defendants' TACO-LITOS chips are confusingly similar to Plaintiffs' bags for TAKIS chips, and that the word mark TACO-LITOS is confusingly similar to TAKIS.

Plaintiffs moved for a preliminary injunction. After considering briefing and exhibits exceeding 2,000 pages, Judge Collins denied the motion in July 2013, finding that Plaintiffs were unlikely to prevail on the merits of any of their claims at trial. She found that Plaintiffs were unlikely to be able to establish that TACO-LITOS is

6

1    confusingly similar to TAKIS, or that the TACO-LITOS packaging is confusingly

2    similar to the TAKIS packaging. Judge Collins further found that Plaintiffs had not

3    established a likelihood of success on their claimed trade dress rights in the taquito chip

4    product shape, because they likely abandoned any such rights by entering into an

5    agreement recognizing the right of a competitor, Frito-Lay, to use that shape without

6    any restriction. *See* Exhibit 7.

7         After suffering this heavy blow, Plaintiffs decided to revive baseless and

8    unsupported claims of patent infringement that they had asserted but then dropped in

9    spring of 2012. S. Dunwoody Decl. ¶4. In August 2013, Plaintiffs amended their

10   complaint to allege infringement of two patents they own, one covering a machine to

11   roll up pieces of raw dough into a taquito shape, and the other covering a method for

12   cooking kernels of corn to make dough for taquito chips. *Id.*; Exhibit 8, Counts VII –

13   VIII and Exs. G and H.

14        There is no factual basis for Plaintiffs' allegations of infringement, as Defendants

15   pointed out in a motion for summary judgment seeking dismissal of the patent

16   infringement claims. *See* Docket 162.[4]  Plaintiffs responded to the motion not by

17   offering any proof of infringement, but instead by asking for discovery pursuant to Fed.

18   R. Civ. P. 56(d). *See* Docket 169-4. Judge Collins granted the request and denied the

19   motion for summary judgment without prejudice to Defendants renewing it at the close

20   of discovery. *See* Docket 180.

21        Defendants recognize that Plaintiffs are entitled to discovery, and have responded

22   in a spirit of compromise to several of Plaintiffs' challenges to Defendants'

23   interrogatory responses. Defendants withdrew an objection to one interrogatory,

24   supplemented their responses to three others, and agreed to answer an additional four

25   interrogatories of Plaintiffs' choosing. S. Dunwoody Decl. ¶¶7-8. Nonetheless,

_____

26   [4] Because the briefing and order on the motion for summary judgment on patent
27   infringement was filed under seal, Defendants are not attaching a copy of the pleadings
     and order, to avoid the need to seal this submission, and are only referring to the docket
28   numbers.

Defendant Grupo Bimbo, a multi-national giant that had revenue of $13.1 billion in 2012, *see* http://en.wikipedia.org/wiki/Grupo_Bimbo (last visited March 29, 2014), seeks to impose substantial discovery costs on the much smaller and privately-held Defendants, Snak-King Corp. and its CEO. Plaintiffs therefore should not be permitted to evade the limit of 25 interrogatories imposed by Fed. R. Civ. P. 33(a)(1), nor should Defendants be required to answer an interrogatory that seeks wholly irrelevant information that, even if it had slight relevance, would be unduly burdensome to develop.

Plaintiffs challenge only some of Defendants' responses to interrogatories in this Stipulation. Defendants therefore will not respond to Plaintiffs' passing comments about perceived deficiencies in Defendants' responses to requests for production of documents, other than to note that neither side has yet completed production of documents sought by the other. Because of delays by both sides in producing documents, and the need for more time to address claim construction issues, the parties the parties have submitted a stipulation asking the Court to extend the fact discovery cutoff to August 29, 2014. S. Dunwoody Decl. ¶11.

### III.   JOINT SPECIFICATION OF ISSUES IN DISPUTE

**A.   Did Defendants Improperly Treat Interrogatory Nos. 1, 3, and 12 as Including Discrete Subparts That Count Against the Twenty-Five Interrogatory Limit?**

**1.   Is Interrogatory No. 1 a single interrogatory, or does it contain three discrete subparts?**

INTERROGATORY NO. 1:

Identify (a) the trade channels through which TACO-LITOS corn snacks are marketed and sold, (b) the specific methods by which TACO-LITOS corn snacks are advertised and promoted, and (c) the demographics of target consumers to whom TACO-LITOS corn snacks are marketed and sold, including but not limited to, age,

8

1    income, ethnicity, gender and cultural background.

2    <u>RESPONSE TO INTERROGATORY NO. 1</u>:

3    Defendants object to the classification of this interrogatory as a single

4 interrogatory instead of the [sic] properly identifying it as three separate interrogatories.

5 Without waiving any objections Defendants state as follows:

6    Interrogatory 1(a):  TACO-LITOS rolled taquito chips are marketed and sold

7 through a variety of retail outlets, such as convenience stores, vending machines, gas

8 stations, grocery stores, supermarkets, big-box stores, and bulk discount stores.

9    Interrogatory 1(b):  TACO-LITOS rolled taquito chips are advertised and

10 promoted (i) by direct sales calls; (ii) on posters at Dodger Stadium in Los Angeles; (iii)

11 through trade shows; (iv) in trade journals handed out during trade shows; (v) through

12 in-store advertising at a limited number of supermarkets; and (vi) through co-op

13 advertising run by certain supermarkets, big-box stores and bulk discount stores.

14    Interrogatory 1(c):  TACO-LITOS rolled taquito chips are promoted to anyone

15 who purchases snack foods, specifically targeting those individuals who enjoy the

16 physical characteristics of a rolled taquito chip, including the extra crunch and

17 additional flavoring retained by the configuration of the product.

18          **a.**     **Plaintiffs' Contentions and Points and Authorities**

19    Interrogatory No. 1 is a single interrogatory that seeks details relating to one

20 common theme and does not contain three distinct subparts.  An interrogatory should be

21 treated as a single interrogatory when the subparts are not distinct.  Fed. R. Civ. P. 33;

22 Advisory Committee Note to 1993 Amendment to Fed. R. Civ. 33, 146 F.R.D. 675,

23 675-76 (1993).  "[S]ubparts directed at eliciting details concerning the common theme

24 [of the interrogatory] should be considered a single question . . . ."  *Safeco Ins. Co. of*

25 *Am. v. Rawstron*, 181 F.R.D. 441 (C.D. Cal. 1998) (quoting 8A Charles A. Wright,

26 Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2168.1, at 261

27 (2d ed. 1994)).  "[I]nterrogatory subparts are to be counted as part of but one

28 interrogatory if they are logically or factually subsumed within and necessarily related

1    to the primary question." *Id.* (quoting Ginn v. Gemini, Inc., 137 F.R.D. 320 (D. Nev.

2    1991)); *see also Myers v. U.S. Paint Co.*, 116 F.R.D. 165 (D. Mass. 1987) ("Of the

3    twenty-seven [interrogatories], eleven contain subparts. Of the eleven, there is no

4    instance in which the subparts do not relate to the primary interrogatory and to each

5    other.").

6           Interrogatory No. 1 seeks information relating to the marketing of Defendants'

7    TACO-LITOS.  The fact that the interrogatory identifies the type of marketing

8    information that is expected in the response does not make it three separate

9    interrogatories.  Defendants' attempt to dissect the marketing information into three

10   distinct subparts is inappropriate and flies in the face of the Federal Rules. *See Powell

11   v. Home Depot USA, Inc*., No. 07-80435-Civ-Hurly/Hopkins, 2008 U.S. Dist. LEXIS

12   49144, at *11-12 (S.D. Fla. June 16, 2008) (counting all interrogatories as single

13   interrogatories, including one seeking marketing information including "an

14   identification of the number of [product] units sold, as well as the sales price, customer,

15   and date and location of installation for each unit sold[,]" because they all sought "to

16   elicit details concerning a common theme, and the subparts for each interrogatory

17   [were] 'logically or factually subsumed within and necessarily related to the primary

18   question'").

19          During the mandatory conference of counsel, Defendants' identified *Safeco Ins.

20   Co. of Am. v. Rawstron* and *Superior Communs. v. Earhugger, Inc.* as support that

21   Interrogatory No. 1 contains distinct subparts.  But those cases do not support

22   Defendants' position.  In *Safeco Ins. Co.*, this Court went explained that there is a

23   preference for finding that subparts related to a primary question should be counted as

24   part of a single interrogatory.  Moreover, the interrogatories at issue here are nothing

25   like the interrogatory in *Safeco* that constituted discrete subparts.  Specifically, the

26   interrogatory at issue in *Safeco Ins. Co.* was seeking an explanation relating to responses

27   to twelve different requests for admission in a single interrogatory.  *Safeco Ins. Co. of

28   Am. v. Rawstron,* 181 F.R.D. 441 (C.D. Cal. 2009) (explaining that request for

admission generally relate to different topics).  The court even went on to explain that if the requests for admission related to the same subject, the interrogatory requesting an explanation of those separate responses would not be counted as distinct subparts, but rather as a single interrogatory. *Id.* at 446.

Defendants' reliance on *Superior Communs.* is also misplaced.  The interrogatory at issue was nothing like Interrogatory No. 1, here.  Rather, in *Superior Communs.*, the interrogatory at issue sought all facts that support or undermine every allegation in the Answer; an identification of all persons with knowledge of those facts; and an identification of all documents or things that relate to the facts.  *Superior Communs. v. Earhugger, Inc.*, 257 F.R.D. 215 (C.D. Cal. 2009).  Therefore, the interrogatory at issue did not seek details about one topic, as Interrogatory No. 1 does here.  Rather, it sought facts, people, and documents for every topic in the entire Answer.  Not surprisingly, the court found this interrogatory to contain multiple, discrete subparts.  *Id.  But see* Advisory Committee Note to 1993 Amendment to Fed. R. Civ.2. 33, 146 F.R.D. 675, 675-76 (1993) ("[A] question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication.").  Here, Interrogatory No. 1 is not seeking facts, people, and documents, nor does it relate to every topic in the entire case.

While both cases adequately state and explain the law on this subject, neither of the outcomes in the cases even come close to the situation at hand, where Interrogatory No. 1 elicits details about one common theme.  Accordingly, this Court should order that Interrogatory No. 1 be counted as single interrogatory because it seeks information about a single topic.

### b.  Defendants' Contentions and Points and Authorities

Rule 33(a)(1) limits parties to "25 written interrogatories, including all discrete subparts." This limit was added in 1993, based on the recognition that interrogatories have a high potential for abuse. *Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 443 (C.D.

Cal. 1998). Counting discrete (separate) subparts in the tally up to 25 reduces the risk that interrogatories will be "used as a means of harassment." Advisory Committee's Notes to Rule 33 (1993 amendments).

While Plaintiffs identify the standard for counting subparts, they fail to give the Court a way to apply it. Cases in this district recognize that there is "little guidance" inherent in a common theme and the analysis "falls short of a bright-line test." *Safeco*, 181 F.R.D. at 445. Indeed, at a high abstraction, all interrogatories associated with a claim or defense share a theme. *Kendall v. GES Exposition Serv., Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997) ("If the questions are relevant to the case, it could be argued that all the interrogatories are 'related' . . . and there could never be an excessive number."). Parties could easily evade Rule 33's numerical limitation if subparts were required to be only be generally related to count as a single interrogatory. *See* Advisory Committee's Notes to 1993 amendments ("Parties cannot evade this presumptive limitation through the device of counting as 'subparts' questions that seek information about discrete separate subjects.").

Thus, subparts are not discrete, and are counted together, if they are "logically or factually subsumed within and necessarily related to the primary question." *Safeco,* 181 F.R.D. at 445. In practice, the Court:

> examine[s] whether the first question is the primary and the subsequent questions are secondary to the primary question. ***Or, can the subsequent question stand alone***.

*Id*. (emphasis added). Where the parent question can be answered without reference to the subpart, then the subpart should be counted as a distinct interrogatory. In other words, when subparts are independent of each other— or when they can be answered separately—they are not "factually subsumed within and necessarily related to the primary question." *Kendall*, 174 F.R.D. at 686 (finding that while questions about past and future wages in employment case "might be related to the issue of Plaintiffs' claims

12

for damages," they require separate calculations and are two interrogatories).[5] This is much narrower than Plaintiffs' approach of packaging together several standalone, though tenuously-related, questions into a single interrogatory.

Interrogatory No. 1 is a prime example. It shoehorns three independent questions into an interrogatory broadly labeled as covering marketing. Interrogatory No. 1 asks Defendants to: (1) "identify the trade channels through which TACO-LITOS corn snacks are marketed and sold;" (2) "identify the specific methods by which TACO-LITOS corn snacks are advertised and promoted;" and (3) "identify the demographics of target consumers to whom TACO-LITOS are marketed and sold, *including but not limited to, age, income, ethnicity, gender, and cultural background*" (emphasis added).

This interrogatory illustrates both integrated and discrete subparts. On its own, the third question contains allowable integrated subparts—the italicized portion is secondary to and "subsumed within" the primary question about customer demographics. If Plaintiffs had promulgated the third question alone, it would count as a single interrogatory. *See Banks v. Office of Senate Sergeant-at-Arms*, 222 F.R.D. 7, 10 (D.D.C. 2004) (suggesting that the phrase "including but not limited to" is the hallmark of an interrogatory with integrated subparts, since the material following the phrase is necessarily related to that preceding it).

But the first, second, and third questions are ***not*** subordinate to each other in this way. "Each question is independent of the other and can stand alone." *Kendall*, 174 F.R.D. at 686. For example, Defendants can answer the first question by identifying trade channels without identifying the advertising methods or target customers sought by the second and third questions. Likewise, the demographics of Defendants' target customers are separate from its advertising methods and trade channels. Defendants' complete and separate answers to each subpart confirm this. Because "the first question can be answered fully and completely without answering the [second or third]

---

[5] The *Kendall* decision illustrates both proper and improper interrogatories with examples for each.

question," Interrogatory No. 1 contains three discrete subparts. *Id.* at 686. It counts as three interrogatories.

Plaintiffs' authority compels the same conclusion. For instance, the interrogatory at issue in *Home Depot*, which Plaintiffs cite above, read:

> List the names, addresses, and telephone numbers of all persons who, on your behalf or on behalf of your agents or representatives, have in any way participated in the design, development, testing, production, manufacturing, marketing, license, lease or sale of the Industriaplex Unit and, in so doing, *specify the date and the nature and extent of the participation of each person*.

Exhibit 10 (emphasis added). In that interrogatory, and unlike Interrogatory No. 1 here, it is impossible to answer the secondary question (specifying the date a person acted) without answering the primary question (identifying that person). Thus, the secondary question was subordinate and not counted as a discrete subpart. *Home Depot* does not condone expansive "marketing" interrogatories as Plaintiffs suggest it does. Rather, applying its reasoning here supports scoring Interrogatory No. 1 as three interrogatories, since it contains three questions independent from each other.

### c. Plaintiffs' Proposed Resolution During Conference

At the mandatory conference of counsel, Plaintiffs explained their position on Interrogatory No. 1, as well as Interrogatory No. 4, and cited their legal authority to explain why the details requested in the interrogatories were not distinct subparts, which was also explained in Plaintiffs' letter requesting the conference.  (D. David Decl., at ¶3).  Defendants conceded that their "five discrete subparts" objection to Interrogatory No. 4[6] should be withdrawn and agreed to answer another four unanswered

---

[6] INTERROGATORY NO. 4:

Identify the Person(s) who have developed or created, or who have been asked to develop or create, the packaging, signs, displays, designs, and other promotional materials used, or intended to be used, in connection with the TACO-LITOS corn

14

interrogatories.  Even after Defendants respond to an additional four interrogatories, they are still attempting to avoid answering more than seventeen interrogatories out of the twenty-five allotted by the Federal Rules.  Defendants refused to reconsider their position on Interrogatory No. 1 to help avoid the necessity of bringing this dispute to the Court.

### d.   **Defendants' Proposed Resolution During Conference**

Defendants' counsel came to the conference of counsel with an open mind, and conferred in good faith with Plaintiffs' counsel. After considering Plaintiffs' arguments at the conference, Defendants withdrew their numerosity objection to Interrogatory No. 4 but properly maintained their numerosity objection to Interrogatory No. 1.

### 2.   **Is Interrogatory No. 3 a single interrogatory, or does it contain three discrete subparts?**

INTERROGATORY NO. 3:

Identify the circumstances surrounding the decision to use the TACO-LITOS Mark, the TACO-LITOS Packaging, and the TACO-LITOS Product Configuration, including when the decision was made, who was involved in making the decision, and the information, documents, and materials the person(s) relied upon in making the decision.

---

snacks.

RESPONSE TO INTERROGATORY NO. 4:

Defendants object to the classification of this interrogatory as a single interrogatory instead of the [sic] properly identifying it as five separate interrogatories. Without waiving any objections Defendants state as follows:

Randy Silva and Jeff Roberts. Mr. Silva and Mr. Roberts are employees of Snak King and can be contacted through Defendants' counsel at Davis Wright Termaine LLP. Defendants further state that other Persons have developed advertising or promotional materials for TACO-LITOS corn snacks as part of co-op advertising promotions, but Defendants have played no role in approving, designing or providing any input into such advertising.

15

1 | RESPONSE TO INTERROGATORY NO. 3:

2 |     Defendants object to the classification of this interrogatory as a single

3 | interrogatory instead of properly identifying it as three separate interrogatories.

4 |     Without waiving any objections Defendants state as follows:

5 |     The decision to use the TACO-LITOS Mark was first made in summer 2012.

6 | Individuals involved in this decision include: Barry Levin, Joe Papiri, Randy Silva, Ron

7 | Jones and Jeff Roberts, all of whom can be contacted through Defendants' counsel at

8 | Davis Wright Tremaine LLP.

9 |     The decision to use the TACO-LITOS Packaging was made in the summer of

10 | 2012, as part of Defendants' decision to market and sell its taquito chips under the

11 | TACO-LITOS Mark. Individuals involved in this decision include: Barry Levin, Joe

12 | Papiri, Randy Silva, and Jeff Roberts, all of whom can be contacted through

13 | Defendants' counsel at Davis Wright Tremaine LLP.

14 |     The decision to sell products having the shape of the rolled taquito chip was made

15 | in 2011. Individuals involved in this decision include: Barry Levin, Ron Jones and Joe

16 | Papiri, all of whom can be contacted through Defendants' counsel at Davis Wright

17 | Tremaine LLP.

18 |     Any documents or information relied upon in making the decision to use TACO-

19 | LITOS Mark, TACO-LITOS Packaging and to sell products having the shape of the

20 | rolled taquito chip will be produced in response to Plaintiff's document requests, to the

21 | extent any exist and they can be located through a reasonably diligent search.

22 |     a.    **Plaintiffs' Contentions and Points and Authorities**

23 |     Interrogatory No. 3 seeks details relating to one common theme and does not

24 | contain three distinct subparts. An interrogatory should be treated as a single

25 | interrogatory when the subparts are not distinct. Fed. R. Civ. P. 33; Advisory

26 | Committee Note to 1993 Amendment to Fed. R. Civ. 33, 146 F.R.D. 675, 675-76

27 | (1993). "[S]ubparts directed at eliciting details concerning the common theme [of the

28 | interrogatory] should be considered a single question . . . ." *Safeco Ins. Co. of Am. v.*

*Rawstron*, 181 F.R.D. 441 (C.D. Cal. 1998) (quoting 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2168.1, at 261 (2d ed. 1994)).  "[I]nterrogatory subparts are to be counted as part of but one interrogatory if they are logically or factually subsumed within and necessarily related to the primary question."  *Id.* (quoting Ginn v. Gemini, Inc., 137 F.R.D. 320 (D. Nev. 1991)); *see also Myers v. U.S. Paint Co.*, 116 F.R.D. 165 (D. Mass. 1987) ("Of the twenty-seven [interrogatories], eleven contain subparts. Of the eleven, there is no instance in which the subparts do not relate to the primary interrogatory and to each other.").

Interrogatory No. 3 seeks information relating to the circumstances surrounding the decision relating to the branding of Defendants' rolled tortilla chips.  In *Powell v. Home Depot USA, Inc.*, the court found an interrogatory seeking a wide-range of details about the decision makers for a product to be a single interrogatory, even though the details sought were far more extensive than those in Interrogatory No. 3:

> Interrogatory number 7 calls for a list of names, addresses and telephone numbers of all persons who participated in the design, development, testing, production, manufacturing, marketing, licensing, leasing, or sale or of the Industrialplex unit, as well as the date, nature, and extent of the participation of all such persons. Not only [does this] interrogator[y] seek to elicit details concerning a common theme, the subparts for [the] interrogatory are "logically or factually subsumed within and necessarily related to the primary question."

*Powell*, 2008 U.S. Dist. LEXIS 49144, at *8-9 (internal citations omitted).  Here, the fact that Defendants' branding infringes because of its name, packaging, and product shape does not make this interrogatory three subparts.  Tellingly, the common theme of the interrogatory is illustrated by Defendants' response that identifies all of the same persons being involved in the branding decisions relating to the product name, packaging, and shape.  Defendants' argument that these are distinct subparts is simply unsupported.

17

During the mandatory conference of counsel, Defendants' identified *Safeco Ins. Co. of Am. v. Rawstron* and *Superior Communs. v. Earhugger, Inc.* as support that Interrogatory No. 3 contains distinct subparts. But those cases do not support Defendants' position. In *Safeco Ins. Co.*, this Court went explained that there is a preference for finding that subparts related to a primary question should be counted as part of a single interrogatory. Moreover, the interrogatories at issue here are nothing like the interrogatory in *Safeco* that constituted discrete subparts. Specifically, the interrogatory at issue in *Safeco Ins. Co.* was seeking an explanation relating to responses to twelve different requests for admission in a single interrogatory. *Safeco Ins. Co. of Am. v. Rawstron,* 181 F.R.D. 441 (C.D. Cal. 2009) (explaining that request for admission generally relate to different topics). The court even went on to explain that if the requests for admission related to the same subject, the interrogatory requesting an explanation of those separate responses would not be counted as distinct subparts, but rather as a single interrogatory. *Id.* at 446.

Defendants' reliance on *Superior Communs.* is also misplaced. The interrogatory at issue was nothing like Interrogatory No. 3, here. Rather, in *Superior Communs.*, the interrogatory at issue sought all facts that support or undermine every allegation in the Answer; an identification of all persons with knowledge of those facts; and an identification of all documents or things that relate to the facts. *Superior Communs. v. Earhugger, Inc.*, 257 F.R.D. 215 (C.D. Cal. 2009). Therefore, the interrogatory at issue did not seek details about one topic, as Interrogatory No. 3 does here. Rather, it sought facts, people, and documents for every topic in the entire Answer. Not surprisingly, the court found this interrogatory to contain multiple, discrete subparts. *Id. But see* Advisory Committee Note to 1993 Amendment to Fed. R. Civ.2. 33, 146 F.R.D. 675, 675-76 (1993) ("[A] question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication."). Here, Interrogatory No. 3 does not seek facts, people, and documents, nor does it relate to

1    every topic in the entire case.

2           While both cases adequately state and explain the law on this subject, neither of

3    the outcomes in the cases even come close to the situation at hand, where Interrogatory

4    No. 3 elicits details about one common theme.  Accordingly, this Court should order

5    that Interrogatory No. 3 be counted as single interrogatory because it seeks information

6    about a single topic.

7                **b.     <u>Defendants' Contentions and Points and Authorities</u>**

8           Plaintiffs' conclusory assertion that Interrogatory No. 3 has a common theme

9    because it seeks information about the decisions to use the TACO-LITOS mark,

10   packaging, and configuration ignores how Plaintiffs have pled this case. Interrogatories

11   "seeking facts relating to *separate patents* . . . seek information concerning distinct

12   subjects and, therefore, constitute separate interrogatories." *Stamps.com, Inc. v. Endicia,*

13   *Inc.*, 2009 WL 2576371, *3 (C.D. Cal. May 21, 2009) (emphasis added). A parallel rule

14   should apply in trademark infringement cases where an interrogatory asks for facts

15   relating to separate and distinct groups of trademarks.

16          Plaintiffs have put three groups of trademark registrations at issue here: (1) four

17   registrations for the TAKIS word marks, which Plaintiffs claim are infringed by

18   Defendants' word mark TACO-LITOS; (2) four registrations for trade dress in the

19   appearance of the bags in which Plaintiffs package their TAKIS taquito chips, which

20   Plaintiffs claim are infringed by Defendants' packaging for TACO-LITOS taquito

21   chips; and (3) a registration covering trade dress in the shape, or product configuration,

22   of the TAKIS taquito chips, which Plaintiffs claim is infringed by the shape of

23   Defendants' taquito chips. *See* Exhibit 8 at Exs. B, C and D (registrations for word

24   mark, packaging trade dress, and product configuration). Plaintiffs make this distinction

25   clear in their Complaint. They refer separately to the "TAKIS Mark" (i.e., the word

26   mark), the "TAKIS Trade Dress" (i.e., the packaging trade dress), and the "TAKIS

27   Product Configuration" (i.e., the product configuration trade dress), and plead separate

28   causes of action for infringement of each of these three groups of registrations. *See*

19

1   Exhibit 8 ¶¶8, 14, and 15 (defining "TAKIS Mark," "TAKIS Product Configuration,"

2   and "TAKIS Trade Dress") and Counts I, II, and III (stating separate claims for "Federal

3   Trade Dress Infringement – Packaging", Federal Trademark Infringement –

4   Trademark", and "Federal Trade Dress Infringement – Product Configuration").

5          Thus, Defendants' decision to use the "TACO-LITOS Mark" is relevant only to

6   the claim for infringement of the TAKIS *word mark* registrations, their decision to use

7   the "TACO-LITOS Packaging" is relevant only to the claim for infringement of the

8   *packaging trade dress* registrations, and their decision to use the "TACO-LITOS

9   Product Configuration" is relevant only to the claim for infringement of the *product*

10  *configuration trade dress* registration. These distinctions are important in practice

11  because Defendants sold chips having the taquito shape – what the Interrogatory calls

12  the "TACO-LITO Product Configuration" – to several private label customers long

13  before selling chips in that shape under the "TACO-LITOS Mark" or in the "TACO-

14  LITOS Packaging." *See* Exhibit 9 ¶¶ 10, 13-14. These separate decisions, first to use the

15  "TACO-LITOS Product Configuration" and then, a year later, to use the "TACO-

16  LITOS Mark" and the "TACO-LITOS Packaging," "require Defendants to identify a

17  different set of facts," and are therefore separate questions. *Pouncil v. Branch Law*

18  *Firm*, 277 F.R.D. 642, 647 (D. Kan. 2011) (counting as multiple interrogatories question

19  seeking information about different breaches of defendant's duty of care). Like the

20  plaintiff in *Pouncil*, Plaintiffs are alleging different breaches of law—infringements of

21  different trademarks—that cannot be combined into a single interrogatory. *See* Exhibit 8

22  Counts I, II, and III.

23          Finally, Interrogatory No. 3 asks Defendants to identify documents relevant to all

24  three of these decisions. This request to identify documents is "really a fugitive request

25  for production of documents and the discovery effort would be better served in that

26  format." *Kendall,* 174 F.R.D. at 686. Judges in the Central District routinely count an

27  interrogatory that asks for both facts and documents as two separate interrogatories.

28  *Superior Comm'n v. Earhugger, Inc*, 257 F.R.D. 215, 218 (C.D. Cal. 2009) (finding

interrogatory had "three discrete subparts: facts; persons; and documents" since "knowing that an event occurred is entirely different from learning about the documents that evidence it."); *Safeco*, 181 F.R.D. at 446 (finding that "an interrogatory that asks the responding party to state facts, identify witnesses, or identify documents supporting the denial of each request for admission contained in a set of requests for admissions usually should be construed as containing a subpart for each"). Therefore, Interrogatory No. 3 has at least three, if not four,[7] discrete subparts and should be counted as three interrogatories.

### c.   **Plaintiffs' Proposed Resolution During Conference**

At the mandatory conference of counsel, Plaintiffs explained their position on Interrogatory No. 3, as well as Interrogatory No. 4, and cited their legal authority to explain why the details requested in the interrogatories were not distinct subparts, which was also explained in Plaintiffs' letter requesting the conference.  (D. David Decl., at ¶3).  Defendants conceded that their "five discrete subparts" objection to Interrogatory No. 4 should be withdrawn and agreed to answer another four unanswered interrogatories.  Even after Defendants respond to an additional four interrogatories, they are still attempting to avoid answering more than seventeen interrogatories out of the twenty-five allotted by the Federal Rules.  Defendants refused to reconsider their position on Interrogatory No. 3 to help avoid the necessity of bringing this dispute to the Court.

### d.   **Defendants' Proposed Resolution During Conference**

Defendants' counsel came to the conference of counsel with an open mind, and conferred in good faith with Plaintiffs' counsel. After considering Plaintiffs' arguments at the conference, Defendants withdrew their numerosity objection to Interrogatory No. 4 but maintained their numerosity objection to Interrogatory No. 3.

---

[7] Defendants initially objected that Interrogatory No. 3 had three discrete subparts. While Defendants would be justified in expanding that objection to four, they will limit their objection to maintaining that the interrogatory contains three subparts.

### 3.    Is Interrogatory No. 12 a single interrogatory, or does it contain four discrete subparts?

INTERROGATORY NO. 12:

Identify the dates, locations, duration, frequency, any equipment used, and the Process used for all instances in which Rolled Tortillas were manufactured, Accused Machinery was configured with a rolling up device, test runs for Rolled Tortillas were performed, Accused Processes were performed, or corn was cooked.

RESPONSE TO INTERROGATORY NO. 12:

Defendants object to the classification of this interrogatory as a single interrogatory instead of properly identifying it as four separate interrogatories. Defendants object to this interrogatory on the grounds of Undue Burden and Relevance to the extent that it seeks (a) identification of equipment used in the Subject Process from and after the toasting/baking step, (b) information on cooking corn other than the one instance in July 2013 in which dough made from cooked corn was used to make a test batch of rolled tortilla chips through the frying step that was then discarded, and (c) the dates, duration, and frequency of each instance on which Rolled Tortillas were manufactured or test runs for Rolled Tortillas were performed. Defendants object to the phrases "rolling up device," "configured with a rolling up device," "test runs for Rolled Tortilla were performed," and "corn was cooked" as vague and ambiguous. Without waiving the foregoing objections, and using their understanding of the phrases "rolling up device," "configured with a rolling up device," "test runs for Rolled Tortillas were performed," and "corn was cooked," Defendants respond as follows:

[1] All instances in which Rolled Tortillas were manufactured other than in test runs took place at Snak King's City of Industry, California plant. The equipment used in instances in which Rolled Tortillas were manufactured will also be shown to counsel for Bimbo during the requested inspection of the City of Industry, California plant. The process used for those instances was:  mixed corn flour with water and other ingredients other than corn, water or lime to make a dough; roll out the dough and cut it into pieces;

22

roll up the pieces; then bake, fry, cool, season, and package them.

[2] Subject Machinery was configured with a rolling up device in the instances identified in response to subpart [1] above and in response to subpart [3] below.

[3] Snak King performed test runs for Rolled Tortillas at its city of Industry plan before it began commercial production of rolled tortilla chips in early 2012. Defendants performed tests runs lasting approximately 15 minutes each for Rolled Tortillas at is Freeport plant in July 2013. The equipment used in those test runs will be shown to counsel for Bimbo during the requested inspections of the City of Industry, California and Freeport, Illinois plants. The process used for test runs at the City of Industry plant is the same as described in response to subpart [1], although not every step beyond the rolling step may have been performed in each of those test runs. The process used for one of the test runs at the Freeport plant was mix corn flour with water and other ingredients other than corn, water or lime to make a dough; roll out the dough and cut it into pieces; roll up the pieces; then bake them. The chips from this test run were immediately discarded. The process used for the other test run of tortilla chips conducted in July 2013 at the Freeport plant was:  simmer dry corn kernels in a kettle in water to which some lime (calcium hydroxide) has been added; turn off the heat and add some cold water to the kettle; transfer the corn, water and lime mixture to a soaking tank and let it soak for eight to ten hours but not so long that the mixture reaches room temperature; pump the mixture through a washing system and grind the corn into dough; roll out the dough and cut it into pieces; roll up the pieces; then bake and fry [sic] them. The chips from this test run were immediately discarded.

[4] The test run at the Freeport plant in July 2013 lasting approximately 15 minutes in which dry corn kernels were simmered in water but not seasoned or packaged and were then discarded is the only instance in which Snak King cooked corn kernels to make a dough that was used to make rolled tortilla chips.

///

///

23

**a.** **Plaintiffs' Contentions and Points and Authorities**

Interrogatory No. 12 seeks details relating to one common theme and does not contain four distinct subparts.  An interrogatory should be treated as a single interrogatory when the subparts are not distinct.  Fed. R. Civ. P. 33; Advisory Committee Note to 1993 Amendment to Fed. R. Civ. 33, 146 F.R.D. 675, 675-76 (1993).  "[S]ubparts directed at eliciting details concerning the common theme [of the interrogatory] should be considered a single question . . . ."  *Safeco Ins. Co. of Am. v. Rawstron*, 181 F.R.D. 441 (C.D. Cal. 1998) (quoting 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2168.1, at 261 (2d ed. 1994)).  "[I]nterrogatory subparts are to be counted as part of but one interrogatory if they are logically or factually subsumed within and necessarily related to the primary question."  *Id.* (quoting Ginn v. Gemini, Inc., 137 F.R.D. 320 (D. Nev. 1991)); *see also Myers v. U.S. Paint Co.*, 116 F.R.D. 165 (D. Mass. 1987) ("Of the twenty-seven [interrogatories], eleven contain subparts. Of the eleven, there is no instance in which the subparts do not relate to the primary interrogatory and to each other.").

Interrogatory No. 12 requests information regarding the scope of infringing activity.  Specifically, the interrogatory seeks details about alleged infringing activity including when it occurred, where it occurred, how long it occurred, and what equipment was used during each occurrence.  There is nothing about this interrogatory that makes it discrete subparts.  It is inconceivable how an interrogatory seeking information about the various instances of infringement relating to the same product could constitute four discrete subparts.  *See In re Google Litig.*, No. C 08-03172 RMW (PSG), 2011 U.S. Dist. LEXIS 151337, at *11-12 (N.D. Cal. July 8, 2011) (noting that Defendants "were ordered to produce documents or a supplemental interrogatory response "sufficient to show what accused activity is conducted inside the United States and what activity is accused outside the United States, including the location of each of its search-related servers and the volume of search queries processed on those servers").  ///

During the mandatory conference of counsel, Defendants' identified *Safeco Ins. Co. of Am. v. Rawstron* and *Superior Communs. v. Earhugger, Inc.* as support that Interrogatory No. 12 contains distinct subparts.  But those cases do not support Defendants' position.  In *Safeco Ins. Co.*, this Court went explained that there is a preference for finding that subparts related to a primary question should be counted as part of a single interrogatory.  Moreover, the interrogatories at issue here are nothing like the interrogatory in *Safeco* that constituted discrete subparts.  Specifically, the interrogatory at issue in *Safeco Ins. Co.* was seeking an explanation relating to responses to twelve different requests for admission in a single interrogatory.  *Safeco Ins. Co. of Am. v. Rawstron,* 181 F.R.D. 441 (C.D. Cal. 2009) (explaining that request for admission generally relate to different topics).  The court even went on to explain that if the requests for admission related to the same subject, the interrogatory requesting an explanation of those separate responses would not be counted as distinct subparts, but rather as a single interrogatory. *Id.* at 446.

Defendants' reliance on *Superior Communs.* is also misplaced.  The interrogatory at issue was nothing like Interrogatory No. 12, here.  Rather, in *Superior Communs.*, the interrogatory at issue sought all facts that support or undermine every allegation in the Answer; an identification of all persons with knowledge of those facts; and an identification of all documents or things that relate to the facts.  *Superior Communs. v. Earhugger, Inc.*, 257 F.R.D. 215 (C.D. Cal. 2009).  Therefore, the interrogatory at issue did not seek details about one topic, as Interrogatory No. 12 does here.  Rather, it sought facts, people, and documents for every topic in the entire Answer.  Not surprisingly, the court found this interrogatory to contain multiple, discrete subparts. *Id.  But see* Advisory Committee Note to 1993 Amendment to Fed. R. Civ.2. 33, 146 F.R.D. 675, 675-76 (1993) ("[A] question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication.").  Here, ///

1  Interrogatory No. 12 is not seeking facts, people, and documents, nor does it relate to

2  every topic in the entire case.

3        While both cases adequately state and explain the law on this subject, neither of

4  the outcomes in the cases even come close to the situation at hand, where Interrogatory

5  No. 12 elicits details about one common theme.  Accordingly, this Court should order

6  that Interrogatory No. 12 be counted as single interrogatory because it seeks information

7  about a single topic.

8              **b.      Defendants' Contentions and Points and Authorities**

9        Interrogatory No. 12 asks for information about different processes, machines,

10  and patents, and should be counted as four interrogatories. It requires Defendants to

11  explain in detail: (1) "all instances in which Rolled Tortillas were manufactured,"

12  irrespective of whether the manufacturing process encompassed the asserted patents;

13  (2) "all instances in which . . . Accused Machinery was configured with a rolling up

14  device," irrespective of whether the resulting machine with a "rolling up device" was

15  used or, if used, would infringe the asserted patents; (3) "all instances in which . . . test

16  runs for Rolled Tortillas were performed," irrespective of the machinery or processes

17  used to make those Rolled Tortillas; and (4) "all instances in which . . . Accused

18  Processes were performed, or corn was cooked," again irrespective of the resulting

19  products. Interrogatory No. 12 improperly combines each of Plaintiffs' theories of

20  liability into a single interrogatory. Instead, they must treat each separately, since each

21  alleged infringement is a distinct fact question. *Collaboration Properties, Inc. v.*

22  *Polycom, Inc.*, 224 F.R.D. 473, 475 (N.D. Cal. 2004) (in patent case, denying plaintiff's

23  motion to compel response to interrogatory seeking information about each of

24  defendant's accused products, since each product represented a different theory of

25  liability and therefore a separate topic).

26        Plaintiffs cite *In re Google Litigation* to suggest that Interrogatory No. 12 counts

27  as one interrogatory. That case does not mention, much less discuss, interrogatory

28  subparts. But even were it relevant to this dispute, the case cuts in Defendants' favor.

The interrogatory there sought the location of Google's computers that performed the *single accused process at issue* (ranking pages in search results). It did not require Google to investigate separately and cull together information about multiple processes, let alone different machines, configurations, and test runs. Nor did it require Google to identify different facts for each subpart, since the location of its computers did not depend on the functions they performed. To answer Interrogatory No. 12, by contrast, Defendants must identify facts about testing for and manufacturing Rolled Tortillas, configuring and using the Accused Machines, and performing the Accused Processes, regardless of whether each results in allegedly infringing activity. This is another instance where accepting Plaintiffs' expansive interpretation of a common theme—here the "scope of infringing activity"— undercuts the policy behind Rule 33's limit.

At minimum, Interrogatory No. 12 counts as two interrogatories because it asks for information related to the two separate asserted patents. The first patent asserted, the '974 Patent, covers an "apparatus for rolling raw tortillas into the shape of a 'taco.'" Exhibit 8, at Ex. G at 1:4-5. The second patent asserted, the '108 Patent, covers a "process for making a new appetizer based on nixtamalized corn dough" that involves, among other steps, boiling kernels of corn. *Id.* at Ex. H at 1:10-12.[8]

Interrogatory No. 12 asks for facts about both patents. Some parts of the interrogatory (those seeking "information about all instances in which Rolled Tortillas were manufactured, . . . [and] test runs for Rolled Tortillas were performed") are potentially relevant to both patents. Other parts are relevant to just one of the two patents. The portion seeking information as to instances in which "Accused Machinery was configured with a rolling up device" relates only to the '974 patent, since the '108 Patent has nothing to do with rolling machines. The portion seeking "information about all instances in which . . . corn was cooked" relates only to the '108 Patent, since the

---

[8] When Defendants answered Interrogatory No. 12, the parties had not yet reached their agreement to postpone discovery as to the '108 Patent pending a possible resolution of that claim.  Defendants therefore answered the interrogatory as to both patents.

'974 Patent has nothing to do with cooking corn. Because "interrogatories seeking facts relating to separate patents" are counted separately, Interrogatory No. 12 contains at least two discrete subparts. *Stamps.com, Inc. v. Endicia, Inc.*, 2009 WL 2576371, *3 (C.D. Cal. May 21, 2009).

### c.    <u>Plaintiffs' Proposed Resolution During Conference</u>

At the mandatory conference of counsel, Plaintiffs explained their position on Interrogatory No. 12, as well as Interrogatory No. 4, and cited their legal authority to explain why the details requested in the interrogatories were not distinct subparts, which was also explained in Plaintiffs' letter requesting the conference.  (D. David Decl., at ¶3).  Defendants conceded that their "five discrete subparts" objection to Interrogatory No. 4 should be withdrawn and agreed to answer another four unanswered interrogatories.  Even after Defendants respond to an additional four interrogatories, they are still attempting to avoid answering more than seventeen interrogatories out of the twenty-five allotted by the Federal Rules.  Defendants refused to reconsider their position on Interrogatory No. 12 to help avoid the necessity of bringing this dispute to the Court.

### d.    <u>Defendants' Proposed Resolution During Conference</u>

Defendants reconsidered each of their objections during the conference, and withdrew their numerosity objection to Interrogatory No. 4. After considering Plaintiffs arguments at the conference, however, Defendants maintained their numerosity objection to Interrogatory No. 12.

**B.    Did Defendants Improperly Object to Interrogatory No. 10 as Vague, Irrelevant, and Unduly Burdensome?**

<u>INTERROGATORY NO. 10:</u>

Identify all trade secrets or patentable subject matter embodied in the Accused Products, including any components of the Accused Machinery, acts or compositions in the Recipes, or acts in the Accused Process, by identifying the components, acts, or

1   compositions deemed to be publicly unavailable at present or the time of any applicable

2   patent application filing.

3   RESPONSE TO INTERROGATORY NO. 10:

4        Defendants object to this interrogatory on the grounds of Undue Burden and

5   Relevance, and on the grounds that the phrases "acts . . . in the Recipes," "acts in the

6   [Subject] Process, and "acts ... deemed to be publicly unavailable" are vague,

7   ambiguous and unintelligible.

8        **1.    Plaintiffs' Contentions and Points and Authorities**

9        Interrogatory No. 10 requests information relating to Defendants' alleged

10   infringement.  Defendant seeks to avoid responding to Interrogatory No. 10, in part,

11   because they allege that the word "acts" is vague and ambiguous.  However, words

12   should be "given their plain and ordinary meanings and read in the context of the

13   discovery requests[,]" and common sense should be used to guide the responding party.

14   *Frankford Trust Co. v. Advest, Inc*., No. 93-329, 1996 U.S. Dist. LEXIS 14879, at *15

15   (E.D. Penn. Oct. 1, 1996).  Remarkably, despite alleging that the word "acts" is vague

16   and ambiguous, as used in Interrogatory No. 10, Defendants had no such problem when

17   using the words "act" and "activities" in their own discovery requests.  (Def.'s 2d Set of

18   RFP, at 1 (Definition C); *Id.* at 8-9 (RFP Nos. 19-25); D. David Decl., at ¶15).  As

19   Defendants demonstrate in their own requests, "acts" is a commonplace word;

20   Defendants should be required to respond to the interrogatory according to the plain and

21   ordinary meaning of "acts."

22        Defendants also unreasonably refuse to respond to this interrogatory based on

23   relevancy.  But Defendants have not provided a single reason why such objections are

24   proper.   *Hill v. Eddie Bauer*, 242 F.R.D. 556, 561 (C.D. Cal. 2007) (finding

25   Defendant's burden not met for supporting a relevancy objection when "defendant has

26   not provided any explanation at all why these requests are not relevant").  Moreover, the

27   legal standard for relevancy is lower for discovery than it is for admissibility.  *In re*

28   *Toyota Motor Corp. Unintended Acceleration Mktg. Sales Practices & Prods. Liab.*

*Litig.*, No. 8:10 ML02151 JVS (FMOx),  2010 U.S. Dist. LEXIS 62393, at *63 n.2 (C.D. Cal. June 1, 2010) ("Of course, when referring to 'relevancy' in the discovery context, the Court is not concerned with a document's relevancy for admissibility purposes; rather, the Court is concerned with the lower standard of relevancy applicable to a document's discoverability.").  "For discovery purposes, relevance means only that the materials sought are reasonably calculated to lead to the discovery of admissible evidence." *Akers v. Keszei*, No. 2:07-cv-00572-JCM-GWF, 2009 U.S. Dist. LEXIS 106247, at *3-4 (D. Kan. Oct. 27, 2009) (quoting *Eicholtz v. J.C. Penny Co.*, 2006 U.S. Dist. LEXIS 61662 (D. Nev. 2006)).  "Further, '[u]nder the Federal Rules, the scope of discovery is broad and discovery should be allowed unless the information sought has no conceivable bearing on the case." *Id.* (quoting *Jackson v. Montgomery Ward & Co.*, 173 F.R.D. 524, 528 (D. Nev. 1997)).

Here, there is no question that the request will lead to the discovery of admissible evidence relating to Defendants' infringing activity and prior art.  The interrogatory requests that Defendants identify which portions of its accused equipment are trade secrets, patentable, or in the public domain.  Clearly, if the activity is a trade secret that is patentable or in the public domain, it cannot constitute prior art.  Further, Defendants' argument that this interrogatory is not relevant is contradictory to the positions it has taken in this case.  For example, Defendants required that a patent prosecution bar be added to the protective order before allowing a plant inspection.  In support, Defendants counsel argued that a prosecution bar was needed because, among other things, Defendants' equipment and processes included trade secrets.  (Mallin Decl., at ¶5).  However, at the same time, Defendants' counsel represented that the patents were old and invalid.   (Mallin Decl., at ¶6).  If Defendants believe that their infringing processes or equipment contain trade secrets or patentable subject matter, then information responsive to this interrogatory would have a bearing on the credibility of Defendants' possible invalidity allegations:  that those same processes and equipment are prior art or have been practiced for "thousands of years."

Additionally, Defendants' objection regarding undue burden is also baseless. Defendants must establish that responding to discovery would create an undue burden. *Bible v. Rio Properties, Inc.*, 246 F.R.D. 614, 618-19 (C.D. Cal. 2007); *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985) (finding that conclusory recitations of expense and burdensomeness were not sufficient to demonstrate why the requested discovery was objectionable).  Defendants provided no support for their objections.  In fact, Defendants have already committed to identifying information, such as trade secrets, that is subject to the patent prosecution bar under the protective order. (Amended Stipulated Protective Order §§ 8, 17; D. David Decl., at ¶16).  This interrogatory seeks nothing more than an identification of the very same type of information that Defendants claim is too burdensome to provide here.

Defendants should be required to respond to Interrogatory No. 10 by identifying any trade secrets and patentable subject matter in the Accused Products, not more than seven days after the Court issues an order responsive to this interrogatory.

### 2.    Defendants' Contentions and Points and Authorities

Interrogatory No. 10 seeks information about trade secrets or patentable subject matter in the machinery that Plaintiffs accuse of infringing U.S. Patent No. 6,393,974.[9] That information is outside the scope of allowable discovery, which is limited to "matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Moreover, "the court must limit" the extent of discovery that falls within the scope of what is otherwise allowable "if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."  *See* Fed. R. Civ. P. 26(b)(2)(C)(iii). The information sought by Interrogatory No. 10 is not relevant to any

---

[9] After Defendants answered Interrogatory No. 10, the parties agreed to postpone discovery as to U.S. Patent No. 6,838,108 pending a possible resolution of the infringement claim as to that patent. As a result, the interrogatory currently is limited to seeking information about machinery that allegedly infringes the '974 patent.

31

claims or defenses, and thus is outside the scope of allowable discovery. But even if it did have some relevance (and it does not), any minimal relevance would be outweighed by the burden of answering the interrogatory. Defendants therefore should not have to respond to the interrogatory.

*The Information Sought Is Irrelevant*. Contrary to Plaintiffs' assertion, the interrogatory will not "lead to the discovery of admissible evidence relating to Defendants' infringing activity and prior art."

*First*, the interrogatory will not "lead to the discovery of admissible evidence relating to Defendants' infringing activity." The '974 patent claims a machine having the four elements stated in Claim 1, its sole independent claim:

> 1. An apparatus for production of a small tortilla comprising
>
> > [1] a sheeter laminator;
> >
> > [2] an exit conveyor operably connected to said sheeter
> >
> > > laminator; and
> >
> > [3] an acceleration conveyor transversally positioned to
> >
> > > said exit conveyor said acceleration conveyor having
> > >
> > > > [4] pre-rolling up meshes and final rolling up meshes
> > > >
> > > > for precise rolling up of small tortillas.

Exhibit 8, at Ex. G, 6:19-28 (bracketed numbers added).

To establish infringement of the '974 patent, Plaintiffs must prove that Defendants[10] make, use, sell, offer to sell, or import a machine having all four of these elements. 35 U.S.C. § 271(a); *see also, e.g., Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999) (to show infringement, patentee must prove accused product contains every limitation of a patent claim).

---

[10] Only Plaintiff Grupo Bimbo S.A.B. de C.V. asserts the patent infringement claim, and it asserts that claim only against Defendant Snak-King Corp. Exhibit 8, Counts VII and VIII. For simplicity, however, this discussion will continue to refer to "Plaintiffs" and "Defendants."

1    Defendants do not dispute that information about the structure of the machines
2    they use to roll up pieces of dough to make their taquito chips is relevant and
3    discoverable.[11] Defendants have provided substantial information about the structure of
4    Defendants' taquito-chip rolling machines in response to Plaintiffs' other
5    interrogatories, requests for production, requests for inspection of premises, and
6    requests for admission. Those discovery requests and responses are not at issue here.

7    Interrogatory No. 10, by contrast, does not seek information about the structure of
8    Defendants' taquito-chip rolling machines. Rather, it demands that Defendants
9    "[i]dentify all trade secrets or patentable subject matter embodied in" those machines,
10   thereby asking Defendants to reach legal conclusions about whether some aspects of
11   those machines might be subject to protection under trade secret or patent law.

12   But whether Defendants' taquito-chip rolling machines could be protected in
13   whole or in part under trade secret or patent law is irrelevant to whether they infringe
14   the '974 patent. A patent on an invention in no way guarantees that the patentee can
15   practice his or her invention without infringing someone else's patent. On the contrary,
16   it is quite common for a patented invention to also be covered by other third-party
17   patents. *See Atlas Powder Co. v. E.I. du Pont De Nemours & Co.*, 750 F.2d 1569, 1580-
18   81 (Fed. Cir. 1984) (stating the "well-known fact that a very considerable portion of the
19   patents granted are in a field covered by a former relatively generic or basic patent, …
20   and cannot be practiced unless by license thereunder"). So even if there is something
21   patentable in Defendants' taquito-chip rolling machines, the presence of that patentable
22   subject matter would not prevent the machines from infringing the '974 patent.
23   Likewise, if the structure of a machine is kept secret, thereby potentially qualifying
24   some or all of it for protection as a trade secret, that trade secret protection would not

---

[11] The terms "Accused Products" and "Accused Machinery" are defined so broadly as to
include machines involved in making taquito chips beyond those used to roll out dough
and then roll it up into a taquito shape, such as ovens, fryers, and packaging machines.
The '974 patent does not cover any machines not involved with rolling up dough, and
information about those machines is ***not*** relevant.

1  shield the machine from infringing a patent that otherwise covers it. Defendants have
2  never asserted a defense on this basis.

3        **Second**, the interrogatory will not "lead to the discovery of admissible evidence
4  relating to Defendants' prior art." Plaintiffs appear to argue that that the interrogatory
5  will lead to the discovery of evidence relating to prior art through which Defendants
6  will seek to invalidate the '974 patent. It will not.

7        As with infringement, Plaintiffs have sought information about prior art to the
8  '974 patent through other interrogatories and through requests for production.
9  Defendants have responded and will respond to those discovery requests, which are not
10  at issue here. Although Defendants are not currently aware that their taquito-chip rolling
11  machines constitute prior art that might invalidate the '974 patent, as discussed above
12  Plaintiffs are obtaining full discovery about the structure of those machines so they can
13  determine for themselves whether they might constitute prior art. Moreover, if
14  Defendants become aware of some way in which they believe those machines do
15  constitute prior art and plan to rely on them to invalidate the '974 patent, they will
16  disclose that information in response to other discovery requests regardless of whether
17  the machines have trade secret aspects or are patentable.

18        Plaintiffs' assertion that "if the activity is a trade secret that is patentable or in the
19  public domain, it cannot constitute prior art" is flatly wrong.[12] In *Lockwood v. American
20  Airlines, Inc.*, 107 F.3d 1565, 1570 (Fed. Cir. 1997), for example, the Federal Circuit
21  held that computer software constituted prior art invalidating the plaintiff's patent even
22  though it had secret aspects that were not available to the public. Whether the taquito-
23  chip rolling machines are patentable in some way will have no bearing on whether they

24
25

_____

26  [12] A trade secret must be secret, *see* Cal. Civ. Code § 3426.1(d), so a "trade secret that is
   . . . in the public domain" is a contradiction in terms.  A trade secret may constitute
27  patentable subject matter, but if its owner elects to obtain a patent on it, that subject
   matter will be disclosed in the patent and thus will no longer qualify for trade secret
28  protection.  *See Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 489 (1974).

1   can constitute prior art, for patents are a recognized source of prior art. *See* 35 U.S.C.

2   § 102(a).

3       ***Gathering the Information Sought Would Be Unduly Burdensome***. For the

4   reasons discussed above, the information sought by the interrogatory is not "relevant to

5   any party's claim or defense," *See* Fed. R. Civ. P. 26(b)(1), and thus is not discoverable.

6   But even if that information had some slight relevance (and it does not), the

7   interrogatory is unduly burdensome because the burden or expense of developing the

8   information sought would outweigh whatever slight benefit it might have.

9       Whether Defendants' taquito-chip rolling machines embody any trade secrets or

10   patentable subject matter is not a fact that is readily available to Defendants. Rather,

11   answering Interrogatory No. 10 would require Defendants to undertake a legal analysis

12   that they would not otherwise have to perform in connection with defense of these

13   claims.

14       To qualify as a trade secret, information must "[d]erive[] independent economic

15   value, actual or potential, from not being generally known to the public or to other

16   persons who can obtain economic value from its disclosure or use."  Cal. Civ. Code

17   § 3426.1(d). Determining whether Defendants' taquito-chip rolling machines embody

18   any trade secrets therefore would require assessing the "independent economic value,

19   actual or potential" of all possible aspects of the machines, as well as determining

20   whether those aspects are not generally known.

21       Determining whether the taquito-chip rolling machines embody patentable

22   subject matter would require Defendants to gather any prior art of which they are aware

23   and then analyze whether any of the features of the taquito-chip rolling machines are

24   novel and non-obvious in light of that prior art. *See* 35 U.S.C. §§ 102 and 103.

25       **3.**    **Plaintiffs' Proposed Resolution During Conference**

26       At the mandatory conference of counsel, Plaintiffs requested that Defendants give

27   a substantive response to Interrogatory No. 10.  Defendants' counsel stated that he did

28   not understand the relevance of identifying trade secrets and did not think Defendants

needed to answer this interrogatory until relevance was proven.  Defendants did not provide any support for their objection.  Plaintiffs explained that the relevancy standard is low for discovery purposes.  Nonetheless, in an effort to avoid bringing this before the Court, Plaintiffs gave several examples of how this interrogatory is relevant, including information likely to lead to the discovery of admissible evidence relating to infringement and prior art.  Defendants' counsel agreed that Plaintiffs were entitled to know more about the structure of the rolling up devices and said he believed that the rolling up devices were considered to be trade secrets. (D. David Decl., at ¶¶ 5, 6). Defendants still inexplicably refused to answer this interrogatory.

### 4. Defendants' Proposed Resolution During Conference

Defendants listened with an open mind to Plaintiffs' arguments during the L.R. 37-1 Conference, but were not persuaded that the interrogatory seeks relevant information or does not impose an undue burden. Defendants therefore maintained their objection to the interrogatory.

## C. Did Defendants Improperly Fail to Respond to Interrogatory Nos. 15-17 Based on Their Position Regarding Discrete Subparts in Interrogatory Nos. 1, 3, and 12?

### 1. Should Interrogatory No. 15 be counted as within the twenty-five interrogatory limit?

INTERROGATORY NO. 15:

Identify any patents owned by, controlled by, subject to an obligation to assign, or to which Defendants are either licensee or licensor related to the Accused Products, Rolled Tortilla equipment, Rolled Tortilla Recipes, or related technology.

RESPONSE TO INTERROGATORY NO. 15:

Defendants object to this interrogatory because it exceeds Plaintiffs' limit, under Fed. R. Civ. P. 33(a)(l), of 25 written interrogatories, including all discrete subparts. Defendants object to this interrogatory on the grounds of Relevance and Burden.

///

### a.   Plaintiffs' Contentions and Points and Authorities

Defendants seek to completely avoid answering Interrogatory No. 15 and continue their pattern of evading discovery by attempting to count Interrogatory Nos. 1, 3, and 12 as allegedly being ten interrogatories.[13]   Pursuant to Fed. R. Civ. P. 33, each party is entitled to serve twenty-five written interrogatories on the other party.  All twenty-five interrogatories must be answered separately and fully.  *Id.*  As explained above in section III.A., Defendants improperly treated Interrogatory Nos. 1, 3, and 12 as ten separate interrogatories, even though the details elicited in those interrogatories relate to a single, primary topic.  Defendants should be required to answer Interrogatory No. 15, not more than seven days after the Court issues an order responsive to this interrogatory, as well as any outstanding interrogatories included in the twenty-five interrogatory limit.[14]   Alternatively, the court should grant leave for plaintiffs to serve seven additional interrogatories which will cover the outstanding interrogatories as counted by Defendants, the presently outstanding interrogatory that Defendants likely will not answer for the same counting reasons, and three additional interrogatories that Plaintiffs have yet to serve.

### b.   Defendants' Contentions and Points and Authorities

For the reasons stated above, Interrogatory Nos. 1, 3, and 12 constitute multiple interrogatories, and, when combined with the four additional interrogatories Defendants

---

[13] Defendants also refused to answer Interrogatory No. 14 for the same reason. However, that interrogatory relates to the '108 patent, which that is not part of this motion as the parties are currently negotiating an agreement relating to the '108 patent infringement claim.

[14] After withdrawing their position that Interrogatory No. 4 contained five discrete subparts, Defendants' agreed to answer four additional interrogatories, which the parties agreed would be Interrogatory Nos. 18, 19, 20, and 22 of Plaintiffs Third Set of Interrogatories to Defendants, served on March 11, 2014.  (D. David Decl., at ¶¶ 9-11). Therefore, Plaintiffs have yet to serve three of their allotted twenty-five interrogatories and are entitled to receive a response to Interrogatory No. 21 when the response is due on April 10, 2014.

1   granted Plaintiffs by withdrawing their objection to Interrogatory No. 4, Plaintiffs have

2   exceeded their limit of 25.[15]

3           The Court should also deny Plaintiffs' request for leave to serve additional

4   interrogatories for at least two reasons. First, Plaintiffs never mentioned in the L.R. 37-1

5   Pre-Filing Conference of Counsel that they would ask the Court to allow additional

6   interrogatories beyond the 25 that Rule 33 allows. S. Dunwoody Decl. ¶12. Nor did they

7   make any such request in their letter framing the issues for that conference, which

8   limited the "terms of the discovery order sought" to "Plaintiffs request that Defendants'

9   [sic] provide full and complete supplemental responses to each of the deficient

10  interrogatory responses mentioned above." *See* Exhibit 1. Defendants never had the

11  opportunity to consider Plaintiffs' request.

12          Second, even if the Court considers the motion for leave, Plaintiffs have not made

13  a "particularized showing" as to why they need additional interrogatories. *See Duncan*

14  *v. Paragon Pub., Inc.*, 204 F.R.D. 127, 129 (S.D. Ind. 2001). They justify their request

15  only by complaining that they will have exhausted their allotment of 25 if the Court

16  finds Defendants' objections proper. Their request is devoid of any reason why

17  additional interrogatories here would be "consistent with Rule 26(b)(2)." *See* Fed. R.

18  Civ. P. 33(a)(1). Nor do Plaintiffs explain why other discovery vehicles—document

19  requests, requests for admission, depositions, and physical inspections of Defendants'

20  equipment—would be inadequate. *Duncan*, 204 F.R.D. at 129 (denying motion for

21  leave where plaintiffs failed to show that discovery was not available from other

22  sources).

23          Plaintiffs' motion for leave is both procedurally and substantively deficient, and

24  the Court should deny it.

25  ///

---

26  [15] Plaintiffs have told Defendants they wish to use the four additional interrogatories
27  resulting from withdrawal of Defendants' numerosity objection to Interrogatory No. 4
    by having Defendants answer four interrogatories selected from Plaintiffs' third set of
28  interrogatories, and Defendants have agreed to do so. S. Dunwoody Decl. ¶7.

38

### c.     Plaintiffs' Proposed Resolution During Conference

At the mandatory conference of counsel, Plaintiffs discussed their position regarding the number of interrogatories served and requested that Defendants provide a supplemental response to Interrogatory No. 14.  Defendants refused to reconsider their position that Interrogatory Nos. 1, 3, and 12 should be counted as ten interrogatories. The substance of that dispute is explained in detail in Part III.A. of this Joint Stipulation.

### d.     Defendants' Proposed Resolution During Conference

Defendants reconsidered each of their objections during the conference, and withdrew their numerosity objection to Interrogatory No. 4. After considering Plaintiffs arguments at the conference, however, Defendants maintained their numerosity objections to Interrogatory Nos. 1, 3, and 12, and Plaintiffs have exceeded 25 interrogatories.

### 2.  Should Interrogatory No. 16 be counted as within the twenty-five interrogatory limit?

INTERROGATORY NO. 16:

Identify all persons under the control of Defendants having any knowledge relevant to the subject matter of this suit and any affirmative defenses thereto and describe the subject matter of the knowledge of each person so listed, including specifically the persons with knowledge of the development, implementation or operation of the Accused Products.

RESPONSE TO INTERROGATORY NO. 16:

Defendants object to this interrogatory because it exceeds Plaintiffs' limit, under Fed. R. Civ. P. 33(a)(l), of 25 written interrogatories, including all discrete subparts. Defendants object to this interrogatory on the grounds of Privilege, Undue Burden, Relevance, and that the phrase "persons under the control of Defendants" is vague and ambiguous.

///

///

### a.   Plaintiffs' Contentions and Points and Authorities

Defendants seek to completely avoid answering Interrogatory No. 16 and continue their pattern of evading discovery by attempting to count Interrogatory Nos. 1, 3, and 12 as allegedly being ten interrogatories.  Pursuant to Fed. R. Civ. P. 33, each party is entitled to serve twenty-five written interrogatories on the other party.  All twenty-five interrogatories must be answered separately and fully.  *Id.*  As explained above in section III.A., Defendants improperly treated Interrogatory Nos. 1, 3, and 12 as ten separate interrogatories, even though the details elicited in those interrogatories relate to a single, primary topic.  Defendants should be required to answer Interrogatory No. 16, not more than seven days after the Court issues an order responsive to this interrogatory, as well as any outstanding interrogatories included in the twenty-five interrogatory limit.  Alternatively, the court should grant leave for plaintiffs to serve seven additional interrogatories which will cover the outstanding interrogatories as counted by Defendants, the presently outstanding interrogatory that Defendants likely will not answer for the same counting reasons, and three additional interrogatories that Plaintiffs have yet to serve.

### b.   Defendants' Contentions and Points and Authorities

For the reasons stated above, Interrogatory Nos. 1, 3, and 12 constitute multiple interrogatories, and, when combined with the four additional interrogatories Defendants granted Plaintiffs by withdrawing their objection to Interrogatory No. 4, Plaintiffs have exceeded their limit of 25.[16]

The Court should also deny Plaintiffs' request for leave to serve additional interrogatories for at least two reasons. First, Plaintiffs never mentioned in the L.R. 37-1 Pre-Filing Conference of Counsel that they would ask the Court to allow additional interrogatories beyond the 25 that Rule 33 allows. S. Dunwoody Decl. ¶12. Nor did they

---

[16] Plaintiffs have told Defendants they wish to use the four additional interrogatories resulting from withdrawal of Defendants' numerosity objection to Interrogatory No. 4 by having Defendants answer four interrogatories selected from Plaintiffs' third set of interrogatories, and Defendants have agreed to do so. S. Dunwoody Decl. ¶7.

make any such request in their letter framing the issues for that conference, which limited the "terms of the discovery order sought" to "Plaintiffs request that Defendants' [sic] provide full and complete supplemental responses to each of the deficient interrogatory responses mentioned above." *See* Exhibit 1. Defendants never had the opportunity to consider Plaintiffs' request.

Second, even if the Court considers motion for leave, Plaintiffs have not made a "particularized showing" as to why they need additional interrogatories. *See Duncan v. Paragon Pub., Inc.*, 204 F.R.D. 127, 129 (S.D. Ind. 2001). They justify their request only by complaining that they will have exhausted their allotment of 25 if the Court finds Defendants' objections proper. Their request is devoid of any reason why additional interrogatories here would be "consistent with Rule 26(b)(2)." *See* FED. R. CIV. P. 33(a)(1). Nor do they explain why other discovery vehicles—document requests, requests for admission, depositions, and physical inspections of Defendants' equipment—would be inadequate. *Duncan*, 204 F.R.D. at 129 (denying motion for leave where plaintiffs failed to show that discovery was not available from other sources).

Plaintiffs' motion for leave is both procedurally and substantively deficient, and the Court should deny it.

### c. **Plaintiffs' Proposed Resolution During Conference**

At the mandatory conference of counsel, Plaintiffs discussed their position regarding the number of interrogatories served and requested that Defendants provide a supplemental response to Interrogatory No. 16. Defendants refused to reconsider their position that Interrogatory Nos. 1, 3, and 12 should be counted as ten interrogatories. The substance of that dispute is explained in detail in Part III.A. of this Joint Stipulation.

### d. **Defendants' Proposed Resolution During Conference**

Defendants reconsidered each of their objections during the conference, and withdrew their numerosity objection to Interrogatory No. 4. After considering Plaintiffs arguments at the conference, however, Defendants maintained their numerosity

objections to Interrogatory Nos. 1, 3, and 12, and Plaintiffs have exceeded 25 interrogatories.

### 3. Should Interrogatory No. 17 be counted as within the twenty-five interrogatory limit?

INTERROGATORY NO. 17:

Identify each investigation, opinion, search, test, analysis, or evaluation related to the Accused Products' infringement or non-infringement of, or the scope, validity, or enforceability of each of the Asserted Patents; identifying each person who conducted or helped conduct each such investigation, opinion, search, test, analysis, or evaluation and the date upon which each such investigation, opinion, search, test, analysis, or evaluation was created or performed.

RESPONSE TO INTERROGATORY NO. 17:

Defendants object to this interrogatory because it exceeds Plaintiffs' limit, under Fed. R. Civ. P. 33(a)(1), of 25 written interrogatories, including all discrete subparts. Defendants object to this interrogatory on the grounds of Undue Burden, Relevance, and Privilege.

### a.    **Plaintiffs' Contentions and Points and Authorities**

Defendants seek to completely avoid answering Interrogatory No. 17 and continue their pattern of evading discovery by attempting to count Interrogatory Nos. 1, 3, and 12 as allegedly being ten interrogatories.  Pursuant to Fed. R. Civ. P. 33, each party is entitled to serve twenty-five written interrogatories on the other party.  All twenty-five interrogatories must be answered separately and fully.  *Id.*  As explained above in section III.A., Defendants improperly treated Interrogatory Nos. 1, 3, and 12 as ten separate interrogatories, even though the details elicited in those interrogatories relate to a single, primary topic.  Defendants should be required to answer Interrogatory No. 17, not more than seven days after the Court issues an order responsive to this interrogatory, as well as any outstanding interrogatories included in the twenty-five interrogatory limit.  Alternatively, the court should grant leave for plaintiffs to serve

42

seven additional interrogatories which will cover the outstanding interrogatories as counted by Defendants, the presently outstanding interrogatory that Defendants likely will not answer for the same counting reasons, and three additional interrogatories that Plaintiffs have yet to serve.

### b.   Defendants' Contentions and Points and Authorities

For the reasons stated above, Interrogatory Nos. 1, 3, and 12 constitute multiple interrogatories, and, when combined with the four additional interrogatories Defendants granted Plaintiffs by withdrawing their objection to Interrogatory No. 4, Plaintiffs have exceeded their limit of 25.[17]

The Court should also deny Plaintiffs' request for leave to serve additional interrogatories for at least two reasons. First, Plaintiffs never mentioned in the L.R. 37-1 Pre-Filing Conference of Counsel that they would ask the Court to allow additional interrogatories beyond the 25 that Rule 33 allows. S. Dunwoody Decl. ¶12. Nor did they make any such request in their letter framing the issues for that conference, which limited the "terms of the discovery order sought" to "Plaintiffs request that Defendants' [sic] provide full and complete supplemental responses to each of the deficient interrogatory responses mentioned above." *See* Exhibit 1. Defendants never had the opportunity to consider Plaintiffs' request.

Second, even if the Court considers motion for leave, Plaintiffs have not made a "particularized showing" as to why they need additional interrogatories. *See Duncan v. Paragon Pub., Inc.*, 204 F.R.D. 127, 129 (S.D. Ind. 2001). They justify their request only by complaining that they will have exhausted their allotment of 25 if the Court finds Defendants' objections proper. Their request is devoid of any reason why additional interrogatories here would be "consistent with Rule 26(b)(2)." *See* FED. R. CIV. P. 33(a)(1). Nor do they explain why other discovery vehicles—document requests,

---

[17] Plaintiffs have told Defendants they wish to use the four additional interrogatories resulting from withdrawal of Defendants' numerosity objection to Interrogatory No. 4 by having Defendants answer four interrogatories selected from Plaintiffs' third set of interrogatories, and Defendants have agreed to do so. S. Dunwoody Decl. ¶7.

1   requests for admission, depositions, and physical inspections of Defendants'
2   equipment—would be inadequate. *Duncan*, 204 F.R.D. at 129 (denying motion for
3   leave where plaintiffs failed to show that discovery was not available from other
4   sources).
5         Plaintiffs' motion for leave is both procedurally and substantively deficient, and
6   the Court should deny it.

### c.   Plaintiffs' Proposed Resolution During Conference

8         At the mandatory conference of counsel, Plaintiffs discussed their position
9   regarding the number of interrogatories served and requested that Defendants provide a
10  supplemental response to Interrogatory No. 17.  Defendants refused to reconsider their
11  position that Interrogatory Nos. 1, 3, and 12 should be counted as ten interrogatories.
12  The substance of that dispute is explained in detail in Part III.A. of this Joint Stipulation.

### d.   Defendants' Proposed Resolution During Conference

14        Defendants reconsidered each of their objections during the conference, and
15  withdrew their numerosity objection to Interrogatory No. 4. After considering Plaintiffs
16  arguments at the conference, however, Defendants maintained their numerosity
17  objections to Interrogatory Nos. 1, 3, and 12, and Plaintiffs have exceeded 25
18  interrogatories.

### IV.   PLAINTIFFS' CONCLUSION

20        Defendants continue their pattern of attempting to unreasonably evade and
21  prolong discovery, despite the looming discovery cut-off date just over a month away
22  on April 30, 2014.  Defendants' resistance to Plaintiffs' reasonable requests for relevant
23  information is prejudicial to Plaintiffs' case preparation, not justified, and cannot be
24  vindicated.  Plaintiffs request that this Court issue an order requiring Defendants to treat
25  Interrogatories 1, 3, and 12 as single interrogatories, or in the alternative provide leave
26  for additional interrogatories, and requiring Defendants to provide full and complete
27  supplemental responses to Interrogatories 10 and 15-17 no later than seven days after
28  the Court issues an order compelling supplemental interrogatory responses.

1

## V.   DEFENDANTS' CONCLUSION

2        Defendants have considered, and in several instances acquiesced in, Plaintiffs'

3  challenges to their interrogatory responses. Defendants withdrew an objection to one

4  interrogatory, supplemented their responses to three others, and agreed to answer an

5  additional four of Plaintiffs' choosing. But Defendants have properly maintained their

6  objections to Interrogatory Nos. 1, 3, 10, 12, and 15-17 in good faith for the reasons

7  argued in this stipulation. The Court should sustain those objections.

8

9                                            Respectfully submitted,

10  Dated:  April 14, 2014              **MORRIS POLICH & PURDY LLP**

11                                       By:  /s/ Gerald P. Schneeweis

12                                             Gerald P. Schneeweis
                                              Megan S. Wynne
13                                             Raina L. Richter

14                                       **BRINKS GILSON & LIONE**

15                                             Philip Jones
                                              Robert S. Mallin
16                                             Andrew J. Avsec
                                              Dawn M. David
17
18                                             PRO HAC VICE

19                                       Attorneys for Plaintiffs GRUPO BIMBO S.A.B.
                                        DE C.V.; and BARCEL USA, LLC
20

21

22  Dated:  April 4, 2014               **DAVIS WRIGHT TREMAINE LLP**

23                                       By:  /s/ Stuart R. Dunwoody

24                                             Stuart R. Dunwoody
                                              Sean M. Sullivan
25                                             Cindy L. Caditz
                                              Matthew E. Moersfelder
26
27                                       Attorneys for Defendants SNAK-KING CORP.
                                        and THE TRUSTEE OF THE LEVIN FAMILY
28                                       2010 IRREVOCABLE GIFT TRUST